**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| VIRULITE LLC,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN CO.,<br>Defendant. | Case No. 1:25-cv-00880<br><br>Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Virulite LLC ("Virulite") files this Complaint against Walgreen Co. ("Walgreen") for patent infringement of United States Patent No. 9,314,302 (the "Patent-in-Suit" or "the '302 patent") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

## THE PARTIES

2. Virulite is a corporation organized under the laws of the State of Nevada.

3. On information and belief, Walgreen is an Illinois corporation with a principal address of 200 Wilmot Road, Deerfield, Illinois 60015.

4. Walgreen has regular and established places of business in this District including physical stores at least at 1920 E Riverside Dr, Austin, Texas 78741. Defendant is registered to do business in Texas and may be served via its registered agent at Prentice Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, TX, 78701.

5. On information and belief, Walgreen and/or its subsidiaries sells infringing products at its stores in this District and via its website, walgreens.com, to customers in this District, throughout Texas, and throughout the United States

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

7. This Court has personal jurisdiction over Walgreen for the following reasons: (1) Walgreen is present in within or has minimum contacts within the State of Texas and the Western District of Texas; (2) Walgreen has purposefully availed itself of the privileges of conducting business in the State of Texas and in this district; (3) Walgreen has sought privileges, protections and benefit from the laws of the State of Texas; (4) Walgreen regularly conducts business within the State of Texas and within this district, and Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this district, including deriving substantial revenue from the infringing goods and services in the State of Texas and this district.

8. On information and belief, Walgreen provides its infringing products and services to Texas based customers, including providing Cold Sore Infrared Light Therapy Devices[1] in the State of Texas and in this Judicial District.

9. On information and belief, Walgreen indirectly infringes the Patent-in-Suit in the state of Texas, including but not limited to within this Judicial District, including but not limited to its Cold Sore Treatment Device, as well as the distribution and publishing of support materials

[1] *See*, *e.g.*, https://www.Walgreen.com/store/c/Walgreen-cold-sore-treatment-device/ID=300440073-product.

and blogs[2].

10. On information and belief, Walgreen is used and provides infringing products and services globally in thousands of hospital, enterprises, media companies, service providers, and educational institutions and engages hundreds of millions of viewers at home, at work, and at school including specifically, for example, with respect to Fortune 500 companies, marketing firms, and investment companies.

11. On information and belief, Walgreen, directly or indirectly, designs, develops, manufactures, makes, sells, offers for sale, imports, distributes, advertises, and/or otherwise promotes the accused infringing methods, products, and services in the United States, the State of Texas, and this Judicial District.

12. On information and belief, Walgreen has made, used, offered to sell and/or sold products and services: (1) Cold Sore Treatment Device, current or legacy Walgreen products or services, which use, or have used, one or more of the foregoing products and services as a component product or component service; (2) combinations of products and/or services comprising two or more of the foregoing products and services; (3) and all other current or legacy products and services imported, made, used, sold, or offered for sale by Walgreen products and services imported, made, used, sold, or offered for sale by Walgreen that operate, or have operated in a substantially similar manner as the above-listed products and services, (collectively and individually referred to herein as the "Walgreen System"), all of which infringe at least one claim of each of the Patent-in-Suit both literally and/or under the doctrine of equivalents.

13. On information and belief, Walgreen (or those acting on its behalf) makes, uses, sells, sells access to, imports, offers to sell and/or offers to sell access to the Walgreen System in

[2] *See*, *e.g.*, https://blog.Walgreen.com/.

the United States that infringe (literally and/or under the doctrine of equivalents) one or more claims of each of the Patent-in-Suit.

14. On information and belief, Walgreen, as well as the hardware and software components comprising the Walgreen System to operate, including but not limited to servers, server software, client software, and other computer systems and components infringes (literally and/or under the doctrine of equivalents) at least one claim of each of the Patent-in-Suit.

15. On information and belief, Walgreen is subject to the Court's jurisdiction because it regularly markets, conducts, and solicits business, or otherwise engages in other persistent courses of conduct in the State of Texas, and/or derives substantial revenue from the sale and distribution of goods and services provided to individuals and businesses in the State of Texas including with respect to the Walgreen System.

16. On information and belief, the accused Walgreen System, that Walgreen uses, makes, markets, distributes, offers to sell, and sells to consumers throughout the United States, including in the State of Texas, infringe (either directly and/or indirectly) one or more of the claims of the Patent-in-Suit.

17. On information and belief, Walgreen derives substantial revenue within the state from the offer of infringing products and services, including but not limited to the Walgreen System.

18. On information and belief, Walgreen users who reside in the State of Texas regularly use the accused Walgreen System while they are present in the State of Texas.

19. Venue is proper pursuant to 28 U.S.C. §1400(b) because the defendant has committed acts of infringement in this district and has a regular and established place of business in this district.

**United States Patent No. 9,314,302**

20. On April 19, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 9,314,302 entitled "Cosmetic uses of electromagnetic radiation" to inventor Gordon Rex Paterson Dougal. A true and correct copy of the '302 patent is attached as Exhibit 1.

21. The '302 patent is presumed valid under 35 U.S.C. § 282.

22. Virulite owns all rights, title, and interest in the '302 patent.

23. Virulite has not granted Walgreen an approval, an authorization, or a license to the rights under the '302 patent.

24. The '302 patent relates to, among other things, methods, systems, and devices for cosmetically treating a superficial area of mammalian skin.

25. The claimed invention(s) of the '302 patent sought to solve problems with, and improve upon, existing methods, systems, and devices for cosmetically treating a superficial area of mammalian skin. For example, the '302 patent states:

> In young skin, the collagen just beneath the surface of the skin forms an organised lattice with good elasticity and flexibility. As women go through menopause and men age, both experience increased skin wrinkling and decreased skin thickness. During aging, the collagen changes its structure impacting negatively on the cosmetic appearance of the skin. The change in collagen may also be accelerated by prolonged exposure to the sun's UV rays. Billions of pounds are spent annually on the cosmetic industry and it is estimated that the average woman spends around £800 per annum on skin care products and cosmetics.

*See* '302 patent, Specification at col. 1, ll. 27-37.

The '302 patent then states:

> It is known from the prior art to use chemical peels or cosmetic preparations, typically in the form of creams, to prevent or mitigate wrinkles and as anti-aging agents. Such preparations may contain synthetic or naturally occurring plant and/or animal products. The compositions are applied topically and usually on a regular basis in order to maximise their effects. However, there is limited evidence that even persistent use of such compositions alleviate the visible signs of aging.

*See* '302 patent, Specification at col. 1, ll. 38-46.

The '302 patent then also states:

> As an alternative to cosmetic preparations and surgical facelifts, it is known to use a source of low-level electromagnetic radiation to achieve photochemical responses in the skin, commonly referred to as biostimulation. Biostimulation depends upon the concept of enhanced replication and synthesis, which results in increased collagen production, increased fibroblast stimulation or increased DNA synthesis. The light energy is absorbed in cytochromes and porphyrins within cell mitochondria and cell membranes producing a small amount of singlet oxygen. Typically, patients require four to six sessions for acute conditions and six to eight treatments for chronic conditions. This type of treatment is both prolonged and expensive.

*See* '302 patent, Specification at col. 1, ll. 47-59.

The '302 patent further states:

> Since the 1990s, lasers have been used for skin resurfacing and wrinkle removal. Wrinkle removal is an aggressive technique where tissue is removed layer-by-layer, invading the dermis and effectively inducing second-degree burn. Heat is deposited in the dermis shrinking the collagen and tightening the skin. The laser induces denaturing of the collagen in the dermis and the formation of cross-links, which result in a tightening effect stretching the skin, thus reducing or removing the wrinkles. This process is referred to a thermolysis and thermal heating of tissues is a prerequisite for the therapy, it is thought that the thermal threshold for thermolysis is about 70° C. However, the problem with traditional laser treatment is that the patient may suffer burns and so have a weeping skin, scabs and redness for many weeks post treatment. In addition a high incidence of hyperpigmentation has been reported following $CO_2$ laser wrinkle removal treatment.

*See* '302 patent, Specification at col. 1, ll. 60- col. 2, ll. 8.

26. The invention(s) claimed in the '302 patent solves the problem inherent in the then-existing methods, systems, and devices for cosmetically treating a superficial area of mammalian skin to, among other things, (1) function more efficiently by implementing effective and safe method of reducing or alleviating or removing or diminishing wrinkles or fine lines, rejuvenating skin, retarding the signs of aging and improving skin elasticity, tone and appearance and for generally beautifying skin, and (2) effectively irradiate the skin with a source of divergent electromagnetic radiation with a specific wavelength.

27. Both Walgreen and Walgreen's parent company Walgreens Boots Alliance ("WBA") has been aware of and has been negotiating with Virulite since as early as January 2015.

28. Specifically, in January 2015, Steve Mencanin, managing partner at Virulite, met with Mike Parkis, a senior director and merchandise manager at Walgreen, in Illinois to discuss an exclusive retail launch for Virulite's patented product. This initial meeting set the stage for subsequent communications, which spanned from January 2015 to June 2016, involving various representatives from both Virulite, Walgreen, and WBA, including Sarah Mahom and James Fernley, a representative of WBA.

29. Upon information and belief, Walgreen is and has been aware of at least the '302 patent and that its actions would lead to infringement of this patent.

**CLAIMS FOR RELIEF**

**Count I – Infringement of United States Patent No. 9,314,302**

30. Virulite repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

31. On information and belief, Walgreen (or those acting on its behalf) at least uses and induces the use of the Walgreen System in the United States. Such use infringes (literally and/or under the doctrine of equivalents) at least claim 1 of the '302 patent.

32. On information and belief, the Walgreen System employs and provides methods, systems, and devices for cosmetically treating a superficial area of mammalian skin.

33. The Walgreen System employs and provides a method of cosmetically treating a superficial area of mammalian skin comprising irradiating the skin with a source of divergent electromagnetic radiation centered around 1072 nm.




## Walgreens Cold Sore Treatment Device

Walgreens Cold Sore Infrared Light Technology Device offers safe, comfortable cold sore treatment at home. The device is designed for low-level light therapy (LLLT) using 1072nm infrared light and is effective in reducing the duration of herpes simplex labialis (HSL) episodes and enhancing the healing process.

**Directions:**

Refer to the user manual for full instructions.

**Step 1**



Power on the device: Slide down the front cover until you hear a "beep." The indicator light will turn green, indicating that the device is ready for treatment.

**Note:** You will not see the infrared light. It is invisible to the eye.

**Step 2**



Place the treatment window 10mm away from the treatment area. The device will start a default 3-minute treatment and emit a "beep" when complete.







Walgreens Cold Sore Treatment Device, 1.0 ea

3.7 ★★★★☆ 62

FSA/HSA

$44.99 $44.99/ea

When ordered online




## Description

- Non-invasive & reusable.
- No messy ointments.
- Rechargeable battery.
- Clinically proven to reduce cold sore healing time.
- Proven to reduce cold sore healing times up to 50%.

*See*, *e.g.*, https://www.Walgreen.com/store/c/Walgreen-cold-sore-treatment-device/ID=300440073-product.




*See*, *e.g.*, https://www.influenster.com/reviews/cold-sore-device-Walgreen/media.






*See*, *e.g.*, Snapshot of product manual.

34. The Walgreen System employs and provides a method of cosmetically treating a superficial area of mammalian skin, wherein the cosmetic treatment provides at least one effect selected from the group consisting of: (i) reducing, alleviating, removing or diminishing wrinkles or fine lines; (ii) reducing skin surface area; (iii) rejuvenating skin; (iv) retarding or reversing visible signs of aging; and (v) improving skin elasticity or elastic characteristics of skin, tone, texture and appearance.




## Walgreens Cold Sore Treatment Device

Walgreens Cold Sore Infrared Light Technology Device offers safe, comfortable cold sore treatment at home. The device is designed for low-level light therapy (LLLT) using 1072nm infrared light and is effective in reducing the duration of herpes simplex labialis (HSL) episodes and enhancing the healing process.

**Directions:**

Refer to the user manual for full instructions.

**Step 1**



Power on the device: Slide down the front cover until you hear a "beep." The indicator light will turn green, indicating that the device is ready for treatment.

**Note:** You will not see the infrared light. It is invisible to the eye.

**Step 2**




Place the treatment window 10mm away from the treatment area. The device will start a default 3-minute treatment and emit a "beep" when complete.

*See*, *e.g.*, https://www.Walgreen.com/store/c/Walgreen-cold-sore-treatment-device/ID=300440073-product.

## HOW TO USE

1.Take your device out of the box,

2.Clean the area of your skin that will undergo treatment.

Before starting the treatment, thoroughly cleanse the area around your lips, remove any cosmetics that contain a chemical or acidic element that may affect light output, and lead to a decreased or in-effective treatment.

3.Clean the device.

Wipe the treatment window of the device at least 3 times with 70%-80% alcohol applied to a cotton ball or swab. Avoid the use of any harsh cleaners or bleaches as this may damage your device.

Do not use water or immerse the device in water to clean.

4.Turn on the device for treatment,

a) To Power On the device: slide down (see figure 2) the front cover until you hear a beep. The indicator light will turn on green (see figure 3) which indicates the device is on and ready to be used and treatment can begin.,

b) Place the treatment window 10 mm from the treatment area (see figure 4)

5.Turn off the device.

The default treatment time of the device is 3 minutes, and it will automatically shut off with a beep sound after 3 minutes. Alternatively, you can close the slide cover on the front of the device to turn it off.

6.Clean the device.

Wipe the treatment window of the device at least 3 times with 70%-80% alcohol applied to a cotton ball or swab after treatment.

7.Store the device,

Note: Use the device at the first symptoms of a cold sore. Repeat the treatment three times a day, 3 minutes per use, and with at least 4 hours in between each treatment for two consecutive days




*See*, *e.g.*, Snapshot of product manual.




*See*, *e.g.*, https://www.influenster.com/reviews/cold-sore-device-Walgreen/media.

35. The Walgreen System employs and provides a method of cosmetically treating a superficial area of mammalian skin with the electromagnetic radiation, wherein the electromagnetic radiation has a bandwidth in a range of about 10 to 120 nm.

## DEVICE IDENTIFIER (DI) INFORMATION

Brand Name: WALGREENS

Version or Model: QPZ-01

Commercial Distribution Status: In Commercial Distribution

Catalog Number:

Company Name: WALGREEN CO.

Device Description: COLD SORE DEVICE REUSABLE

| GMDN Term Code | GMDN Term Name | GMDN Term Definition | GMDN Term Status [?] | Implantable? |
|---|---|---|---|---|
| 52750 | Infrared-light cold sore treatment device | A hand-held, battery-powered, portable device designed to be used by a layperson to emit infrared light intended as therapy to reduce the duration of cold sores caused by the herpes virus (herpes labialis). It typically consists of a self-contained unit, light-emitting diodes (LEDs), an internal microprocessor and software, activation control and signal light, and disposable batteries. Upon application, it emits infrared light (wavelengths around 1072 nm) to the dermis of the affected area of an erupting cold sore for a pre-set period of time (e.g., few minutes) and provides a signal to the user when the treatment is complete. | Active | false |

*See*, *e.g.*, https://accessgudid.nlm.nih.gov/devices/00311917130347.




**Walgreens Cold Sore Treatment Device**

Walgreens Cold Sore Infrared Light Technology Device offers safe, comfortable cold sore treatment at home. The device is designed for low-level light therapy (LLLT) using 1072nm infrared light and is effective in reducing the duration of herpes simplex labialis (HSL) episodes and enhancing the healing process.

**Directions:**

Refer to the user manual for full instructions.

Step 1



Power on the device: Slide down the front cover until you hear a "beep." The indicator light will turn green, indicating that the device is ready for treatment.

**Note:** You will not see the infrared light. It is invisible to the eye.

Step 2



Place the treatment window 10mm away from the treatment area. The device will start a default 3-minute treatment and emit a "beep" when complete.

*See*, *e.g.*, https://www.Walgreen.com/store/c/Walgreen-cold-sore-treatment-device/ID=300440073-product.

HOW TO USE

1.Take your device out of the box,

2.Clean the area of your skin that will undergo treatment.

Before starting the treatment, thoroughly cleanse the area around your lips, remove any cosmetics that contain a chemical or acidic element that may affect light output, and lead to a decreased or in-effective treatment.

3.Clean the device.

Wipe the treatment window of the device at least 3 times with 70%-80% alcohol applied to a cotton ball or swab. Avoid the use of any harsh cleaners or bleaches as this may damage your device.

Do not use water or immerse the device in water to clean.

4.Turn on the device for treatment,

a) To Power On the device: slide down (see figure 2) the front cover until you hear a beep. The indicator light will turn on green (see figure 3) which indicates the device is on and ready to be used and treatment can begin.,

b) Place the treatment window 10 mm from the treatment area (see figure 4)

5.Turn off the device.

The default treatment time of the device is 3 minutes, and it will automatically shut off with a beep sound after 3 minutes. Alternatively, you can close the slide cover on the front of the device to turn it off.

6.Clean the device.

Wipe the treatment window of the device at least 3 times with 70%-80% alcohol applied to a cotton ball or swab after treatment.

7.Store the device,

Note: Use the device at the first symptoms of a cold sore. Repeat the treatment three times a day, 3 minutes per use, and with at least 4 hours in between each treatment for two consecutive days




*See*, *e.g.*, Snapshot of product manual.




*See*, *e.g.*, https://www.influenster.com/reviews/cold-sore-device-Walgreen/media.

36. On information and belief, Walgreen's infringement of at least claim 1 of the '302 patent violates 35 U.S.C. § 271(a) and (b). Specifically, upon information and belief, Walgreen (through its agents and employees) directly infringes the claim by at least using (via any testing or demonstrations) the product. Upon information and belief, Walgreen induces the use of to the Walgreen System by selling this product and encouraging the purchasers to use this product,

knowing that such use constituted infringement of the ‘302 patent.

**JURY DEMANDED**

37. Pursuant to Federal Rule of Civil Procedure 38(b), Virulite hereby requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Virulite respectfully requests this Court to enter judgment in Virulite’s favor and against Walgreen as follows:

a. finding that Walgreen has infringed one or more claims of the ’302 patent under 35 U.S.C. §§ 271(a);

b. finding that Walgreen has infringed one or more claims of the ’302 patent under 35 U.S.C. §§ 271(b);

c. finding that Walgreen has willfully infringed one or more claims of the ’302 patent;

d. finding this is an exceptional case under 35 U.S.C. § 285;

e. awarding Virulite damages under 35 U.S.C. § 284, or otherwise permitted by law, including supplemental damages for any continued post-verdict infringement;

f. awarding Virulite pre-judgment and post-judgment interest on the damages award and costs;

g. awarding cost of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

h. awarding such other costs and further relief that the Court determines to be just and equitable.

Dated: June 6, 2025

Respectfully Submitted

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
111 Congress Ave, Suite 500
Austin, Texas 78701
Tel/Fax: (512) 865-7950

Ronald M. Daignault (*pro hac vice* to be filed)*
Chandran B. Iyer (*pro hac vice* to be filed)
Hoda Rifai-Bashjawish (*pro hac vice* to be filed)*
rdaignault@daignaultiyer.com
cbiyer@daignualtiyer.com
hrifai-bashjawish@daignaultiyer.com
DAIGNAULT IYER LLP
8229 Boone Blvd, Suite 450
Vienna, VA 22182

**Not admitted to practice in Virginia*

*Attorneys for Virulite LLC*